USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6-4-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

CONTINENTAL INSURANCE CO., :

Plaintiff, :

- against - :

ATLANTIC CASUALTY INSURANCE CO., :

Defendant. :

- - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**

07 Civ. 3635 (DC)

**APPEARANCES:**

COZEN O'CONNOR
Attorneys for Plaintiff
By: Erick J. Kirker, Esq.
1900 Market Street
Philadelphia, Pennsylvania 19103

NIXON PEABODY LLP
Attorneys for Defendant
By: Aidan M. McCormack, Esq.
Erik W. Drewniak, Esq.
437 Madison Avenue
New York, New York 10022

**CHIN, District Judge**

This case arises out of a June 1, 2004 fire that severely damaged the Pelham Manor, New York home of Donald and Cecile Swallow (the "Swallows"). The fire was caused by the alleged negligence of Wodraska Brothers, Inc. ("Wodraska"), a roofing company. Plaintiff Continental Insurance Company ("Continental") was the Swallows' insurer, and paid them approximately $640,000 on their homeowner's policy. Continental, as subrogee of the Swallows, subsequently sued Wodraska in this Court in 2006. See Cont'l Ins. Co. v. Wodraska Bros., Inc., No. 06 Civ. 680 (CM) (S.D.N.Y. Jan. 27, 2006).

Wodraska was insured by defendant Atlantic Casualty Insurance Company ("Atlantic") under a commercial general liability policy (the "Policy"). After Wodraska notified Atlantic of Continental's claim -- some five months after the fire occurred -- Atlantic disclaimed coverage, citing an exclusion in the Policy and Wodraska's five-month delay in informing Atlantic of the claim. Wodraska failed to respond to Continental's suit, and on June 17, 2006, Judge McMahon entered a default judgment against Wodraska in the amount of $763,695.85.

Continental now brings this action against Atlantic pursuant to New York Insurance Law § 3420, which permits a judgment creditor to bring an action against the insurer of the party against whom the judgment was obtained. Standing in Wodraska's shoes, Continental argues that Atlantic was required to defend and indemnify Wodraska, and is therefore liable to Continental for satisfaction of the default judgment plus interest and costs of this action.

Both parties move for summary judgment. For the reasons set forth below, Continental's motion for summary judgment is denied and Atlantic's is granted. Judgment will be entered in favor of Atlantic dismissing Continental's complaint.

## BACKGROUND

### A. Facts

The facts are largely undisputed, and conflicts in the evidence have been resolved in favor of Continental. The

following facts are drawn from the deposition transcripts, affidavits, declarations, and exhibits[1]:

Continental issued a homeowner's policy to the Swallows that was in effect on June 1, 2004. (Swallow Aff. ¶¶ 1-2; McAuliffe Aff. ¶¶ 3-4). That day, employees of Wodraska were working on the Swallows' roof using a propane torch when the roof caught fire. (Swallow Aff. ¶¶ 5-6; Ruggiero Aff. ¶ 4). Once the fire started, the Wodraska employees fled the scene. (Swallow Aff. ¶ 7). Wodraska later claimed that it notified its insurance broker "within hours of the incident." (Pl. Statement Ex. 14).

The Pelham Manor Fire Department was called to the scene to put out the fire, and subsequently conducted an investigation into its cause. (Ruggiero Aff. ¶¶ 3-4). The Chief of the Department's report reads:

> After a 2 day investigation into the cause of this alarm, it was determined that employees of the roofing contractor on the premises were using a portable, small propane torch to dry the roof in close proximity to highly flammable roofing cement which ignited and spread fire quickly to the upper roof and attic area. These conclusions were reached after interviews with the owners, other witnesses, and the roofing co. owner, as well as physical evidence retrieved at the scene.

(Id. Ex. A).

---

[1] The Court notes that Continental's Rule 56.1 Statement repeatedly cites to allegations contained in its unverified complaint against Wodraska. (See, e.g., Pl. Statement ¶¶ 2, 4, 5 9). On a motion for summary judgment, however, allegations in an unverified complaint cannot be considered as evidence. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). The Court has not relied on any disputed allegations not supported by evidentiary materials.

On June 8, 2004, counsel for Continental sent a letter to Wodraska stating Continental's position that Wodraska's negligence caused the fire and that Continental "intends to pursue its contractual, legal and equitable subrogation interests against you." (McAuliffe Aff. Ex. A). After Continental did not hear from Wodraska or its insurer, on October 26, 2004 Continental's counsel sent another letter to Wodraska stating that "if I do not hear from you with response [sic] to my notice letter within the next ten days, my client has instructed me to file a lawsuit against you." (Pl. Statement Ex. 6). Still hearing nothing, Continental's counsel then sent a letter, dated November 5, 2004, to the Keep Insurance Agency ("Keep"), Wodraska's insurance broker, informing Keep of the claim and instructing Keep to forward the notice of claim to Atlantic. (Id. Ex. 7).

On November 11, 2004, Keep submitted notice of the claim to Atlantic's counsel, who then notified Atlantic. (McAuliffe Aff. Ex. B). This was the first time Wodraska provided notice to Atlantic of the claim. (McAuliffe Aff. ¶ 6).

In a letter to Wodraska dated November 23, 2004, American Claims Service, Inc. ("ACS"), Atlantic's authorized representative, disclaimed coverage on behalf of Atlantic. (Id. Ex. C). Neither Continental nor its counsel was copied on the letter. (Id.). Atlantic stated two reasons for its disclaimer of coverage. First, it contended, pursuant to the Policy's Roofing Limitation Endorsement ("RLE"), that the Policy "does not

provide coverage for costs associated with damage to the building or contents arising out of operations involving any hot tar, wand, torch or heat application or membrane roofing." (Id. at 3). Second, it asserted that the Policy required Wodraska to notify Atlantic "as soon as practicable of an 'occurrence' or an offense which may result in a claim" (McAuliffe Aff. ¶ 21), and Wodraska waited five months to inform Atlantic of the fire. (Id. Ex. C at 4).

That same day, ACS sent a letter to Continental's counsel, informing it that it had disclaimed coverage to Wodraska. (Pl. Statement Ex. 13). The only stated basis for the disclaimer in the letter to Continental's counsel was "an exclusionary endorsement in the [P]olicy." (Id.). The letter did not identify Wodraska's failure to timely notify Atlantic of the claim as a basis for disclaimer.

Ronald Wodraska responded to ACS's disclaimer letter on December 1, 2004. (Id. Ex. 14). In the letter he asked ACS to reconsider its disclaimer, arguing that the accident did not fall within the RLE, and claiming that he notified Keep "within hours of the incident." (Id.). ACS responded to the letter on December 17, 2004, but only addressed the issue regarding the RLE. (Id. Ex. 15).

On January 27, 2006, Continental, as subrogee of the Swallows, filed an action in this Court against Wodraska, seeking to recover the amount it paid to the Swallows as a result of Wodraska's alleged negligence. See Cont'l Ins. Co. v. Wodraska

Bros., Inc., No. 06 Civ. 680 (CM) (S.D.N.Y. Jan. 27, 2006). Wodraska was served with the complaint but never responded.

On May 18, 2006, counsel for Continental sent a letter to ACS enclosing a courtesy copy of the motion for entry of default judgment it intended to file against Wodraska. (McAuliffe Aff. Ex. D). This May 18, 2006 letter was the first time Atlantic received any notice of Continental's lawsuit against Wodraska; in fact, Wodraska never notified Atlantic of the Continental lawsuit. (McAuliffe Aff. ¶ 14). On May 25, 2006, ACS sent a letter to Wodraska informing it of Continental's pending motion, encouraging Wodraska to respond, and reiterating its disclaimer of coverage. (Id. Ex. E). Wodraska took no action, however, and on July 17, 2006 Judge McMahon entered a default judgment against Wodraska in the amount of $763,695.85 (the amount Continental paid to the Swallows on the homeowner's policy plus interest and costs). (Id. Ex. F).

Atlantic first learned that a default judgment had been entered against Wodraska on July 24, 2006, when counsel for Continental sent ACS a copy of the default judgment. (Id.). On September 13, 2006, ACS sent Wodraska a letter reiterating its disclaimer of coverage, but nonetheless offering to provide Wodraska with a "courtesy interim defense." (Id. Ex. G). Atlantic then retained a law firm to appear on Wodraska's behalf in Continental's action against Wodraska to attempt to vacate the default judgment. (Dixon Aff. ¶¶ 3-4). That effort was

unsuccessful, however, largely due to Wodraska's failure to cooperate with the law firm Continental retained. (Id. ¶¶ 5-11).

**B. Procedural History**

Continental commenced this action on May 8, 2007 by filing a complaint against Atlantic and invoking the Court's diversity jurisdiction. The complaint was brought pursuant to New York Insurance Law § 3420, and sought a declaratory judgment that Atlantic was obligated to defend and indemnify Wodraska against Continental's claims. Continental demanded relief in the amount of the default judgment plus interest and costs.

The parties engaged in discovery, and these motions followed.

## DISCUSSION

The parties raise three issues in their motions for summary judgment. First, whether Wodraska's failure to timely notify Atlantic of the fire bars Continental's recovery under New York Insurance Law § 3420. Second, whether coverage of the fire is barred by the RLE. Finally, whether Wodraska's failure to cooperate also bars coverage.

I conclude, as a matter of law, that Wodraska's failure to timely notify Atlantic of the fire bars Continental's action here. Accordingly, I do not consider the other issues raised by the parties.

## A. Applicable Standards

### 1. Summary Judgment

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. See Fed R. Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008). In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008). The non-moving party cannot, however, "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and quotations omitted).

In deciding a motion for summary judgment, the role of the Court is not to ask whether "the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Because the

Court's role is limited in this respect, it may not make factual findings, determine credibility of witnesses, or weigh evidence. See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005); Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).

A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting Schwabenbauer v. Bd. of Ed. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981)).

**2. Insured's Obligation to Timely Notify Insurer of a Claim**

Under New York law, compliance with the notice provision of an insurance policy is a condition precedent to an insurer's liability. See Am. Home Assur. Co. v. Int'l Ins. Co., 90 N.Y.2d 433, 440 (1997); Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987); Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos., 748 F.2d 118, 121 (2d Cir. 1984). The notice requirement is triggered when "the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." Commercial Union Ins. Co., 822 F.2d at 271. Once an insured is on notice of a potential claim, it must notify its insurer within

the time limit set forth in the policy, or "within a reasonable time under all the circumstances." Allstate Ins. Co. v. Kashkin, 130 A.D.2d 744, 745 (2d Dept. 1987). Whether notice was given within a reasonable time may be decided as a matter of law where "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." New York v. Blank, 27 F.3d 783, 795 (2d Cir. 1994).

3. **New York Insurance Law § 3420**

New York Insurance Law § 3420 provides that an injured party has certain rights against the insurer of the party responsible for the injuries. Continental brings its claim pursuant to Section 3420(a)(2), which provides, in relevant part, that an injured party may bring an action "against the insurer under the terms of the policy or contract" issued to the insured who is responsible for the injured party's injuries or damages. See N.Y. Ins. Law § 3420(a)(2) (McKinney's 2009). The statute, in other words, authorizes an injured party who has obtained a judgment against the party responsible for the injury -- and who is therefore a judgment creditor -- to "institute a direct action against the insurer of the party against whom the judgment was obtained." Sales v. U.S. Underwriters Ins. Co., No. 93 Civ. 7580 (CSH), 1995 U.S. Dist. LEXIS 4159, at *1 (S.D.N.Y. Apr. 3, 1995).[2] A judgment creditor who brings such an action generally

---

[2] The party asserting a claim under Section 3420(a)(2) must also satisfy certain requirements. See N.Y. Ins. Law § 3420(a)(2). Atlantic does not dispute that these requirements are met in this case.

"stands in the shoes" of the insured vis-a-vis the insurer, and the judgment creditor's "rights under the policy are no greater and no less than that of the insured." Id. at *26; accord Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 212 (2d Cir. 2004) (holding that Section "3420(a)(2) conditions the insurer's liability for the judgment against the insured on whether the insurer would be liable to the insured under the terms of the policy"); JCD Int'l Gem Corp. v. Evanston Ins. Co., No. 94 Civ. 5315 (MBM), 1995 U.S. Dist. LEXIS 11767, at *3 (S.D.N.Y. Aug. 15, 1995) ("In an action pursuant to N.Y. Ins. Law § 3420, the claimant stands in the shoes of the insured and 'must abide by any applicable provisions of the policy.'") (quoting Florio v. Gen. Accident Fire & Life Assurance Corp., 396 F.2d 510, 513 (2d Cir. 1968)).

The injured party does not stand completely in the shoes of the insured, however, because in some circumstances the injured party may have greater rights than the insured. For example, even where the insured fails to give notice to the insurer of a claim as required by a policy, courts may still permit the injured party to recover. See, e.g., Lauritano v. Am. Fid. Fire Ins. Co., 3 A.D.2d 564, 567-68 (1st Dep't 1957). In such a scenario, courts will evaluate the reasonableness of the injured party's notice to the insurer under a less stringent standard than the one applied to an insured's notice to its insurer. As the court in Lauritano explained:

> The injured person's rights must be judged by the prospects for giving notice that were

> afforded him, not by those available to the insured. What is reasonably possible for the insured may not be reasonably possible for the person he has injured. The passage of time does not of itself make delay unreasonable. Promptness is relative and measured by circumstance.

Id. at 568.

Where the insured is the first to give notice of a claim to the insurer, however, then the injured party's rights are considered to be "derivative" of the insured's vis-a-vis the insurer. See Mount Vernon Fire Ins. Co. v. Harris, 193 F. Supp. 2d 674, 679 (E.D.N.Y. 2002) (holding that, where "an injured party does not assert its own right to notify the insurance carrier, but rather relies upon the insured to provide notice, 'its rights vis-a-vis the insurer remain derivative' such that disclaimer against the insured for untimely notice is sufficient to disclaim against the injured party as well") (quoting U.S. Liab. Ins. Co. v. Albertell, No. 92 Civ. 301 (JSM), 1992 U.S. Dist. LEXIS 18537, at **14-15 (S.D.N.Y. Dec. 4, 1992)). In the latter scenario, where the insured's notice is untimely and the insurer disclaims coverage based on untimely notice, an injured party will be unable to recover under Section 3420 against the insurer because of the insured's untimely notice.[3] See U.S. Liab. Ins. Co. v. Winchester Fine Arts Servs., 337 F. Supp. 2d 435, 448 (S.D.N.Y. 2004). Thus it is critical, in assessing a claim brought under Section 3420, to determine which party -- the

---

[3] It is an anomaly of the Section 3420 caselaw, then, that an injured party is better off if the insured gives no notice than late notice.

injured party or the insured -- first notified the insurer of the claim. See id. (noting the importance of this distinction in the Section 3420 caselaw).

**B. Is Continental's Action Barred by Wodraska's Failure to Timely Notify Atlantic of the Claim?**

Atlantic argues that it was not required to defend or indemnify Wodraska in Continental's suit against Wodraska because Wodraska failed to timely notify Atlantic of an incident that could lead to a claim, as required by the Policy. Because Continental stands in Wodraska's shoes in this suit, Atlantic argues, Continental cannot recover against Atlantic under Section 3420.

Continental responds with two arguments. First, it argues that Atlantic's disclaimer of coverage to Wodraska for failure to timely notify is ineffective as to Continental by operation of Section 3420. Second, Continental argues that, even if the disclaimer is effective as to Continental, Atlantic should be estopped from asserting it because Atlantic did not identify Wodraska's failure to timely notify Atlantic of the claim in ACS' November 23, 2004 letter to Continental.

For the reasons set forth below, I conclude, as a matter of law, that Continental's action is barred by Wodraska's failure to timely notify Atlantic of the claim. Continental, the injured party, relied on Wodraska, the insured, to provide notice to Atlantic, the insurer. Because Wodraska was the only party to notify Atlantic of the claim -- through Keep, its agent --

Continental's rights are derivative of Wodraska's. Wodraska's notice was untimely under the Policy as a matter of law, and Continental therefore cannot recover in this action.

First, I discuss Wodraska's delay in providing notice, and conclude that it was unreasonable as a matter of law. Next, I address Continental's argument that Atlantic's disclaimer is ineffective as to Continental. Finally, I consider Atlantic's estoppel argument.

**1. <u>Was Wodraska's Notice Timely?</u>**

The fire occurred on June 1, 2004 in the presence of Wodraska employees. That fact alone is sufficient to put a reasonable person on notice of the possibility of a claim, but days later, on June 8, 2004, counsel for Continental sent Wodraska a letter stating that Continental intended to "pursue its contractual, legal and equitable subrogation interests against you." (McAuliffe Aff. Ex. A). Thus, even if the fire did not put Wodraska on notice of the possibility of a claim, the letter, explicitly raising the possibility of litigation, should have.

Wodraska did not notify its insurer until November 11, 2004 -- a five-month delay -- and there is nothing in the record to indicate that Wodraska had a valid excuse for this delay.[4]

---

[4] According to a letter written by Ronald Wodraska, Wodraska notified Keep, its insurance broker, of the June 1, 2004 fire "within hours." The record, however, contains no evidentiary material to support this assertion, as Ronald Wodraska was not deposed and did not submit an affidavit in this action. The only evidence that Wodraska notified Keep of the

New York courts have held that even shorter delays are unreasonable as a matter of law. See, e.g., Myers v. Cigna Prop. & Cas. Ins. Co., 953 F. Supp. 551, 556 (S.D.N.Y. 1997) (two-month delay unreasonable); Deso v. London & Lancashire Indem. Co., 3 N.Y.2d 127, 130 (1957) (51 days unreasonable); Heydt Contracting Corp. v. Am. Home Assurance Co., 146 A.D.2d 497, 499 (1st Dep't 1989) (four-month delay unreasonable). Accordingly, I hold that Wodraska's five-month delay in notifying Atlantic of the claim was unreasonable as a matter of law.

**2. Is Atlantic's Disclaimer Effective as to Continental?**

Continental argues that Atlantic's disclaimer of coverage to Wodraska is ineffective as to Continental, because Continental has an independent right under New York Insurance Law § 3420(a)(3) to provide notice. In so arguing, Continental relies on two cases dealing with a different situation than the one presented here.

---

fire on June 1, 2004 is his December 1, 2004 letter. That letter, offered for the truth of the matter asserted therein, is hearsay, and cannot be considered on a motion for summary judgment. See Feingold v. New York, 366 F.3d 138, 155 n.17 (2d Cir. 2004) (holding that court cannot consider hearsay on summary judgment motion). Hence, on the admissible evidence before the Court, no jury could find that Wodraska notified Keep "within hours" of the fire. Moreover, even assuming Wodraska did notify Keep "within hours," Keep was Wodraska's agent, not Atlantic's. See Paul Developers, LLC v. Md. Cas. Ins. Co., 28 A.D.3d 443, 445 (2d Dep't 2006) ("Notice to a broker cannot be treated as notice to the insurer . . . ."); Progressive Cas. Ins. Co. v. Yodice, 276 A.D.2d 540, 542 (2d Dep't 2000) ("[A]n insurance broker is the agent of the insured.") (internal citation and quotations omitted); Ford v. Grand Union Co., 268 N.Y. 243, 252 (1935) ("Notice to an agent while acting within the scope of his duties constitutes notice to a principal.").

The cases upon which Continental relies deal with a situation in which an insured never notifies its insurer of the claim, the injured party obtains a default judgment against the insured, the injured party -- now a judgment creditor -- does not know who the insured's insurer is, and there is a significant delay before the judgment creditor notifies the insurer of the claim. Under such circumstances, courts have held that the injured party cannot be precluded from recovery where the insured never notified the insurer. See Lauritano, 3 A.D.2d at 567 (holding that "when the insured has failed to give proper notice, the injured party, by giving notice himself, can preserve his rights to proceed directly against the insurer"); Gen. Accident Ins. Group v. Cirucci, 46 N.Y.2d 862, 863-64 (1979) (holding, in a case in which the insured never notified the insurer of a claim, that "an injured third party may seek recovery from an insured's carrier despite the failure of the insured to provide timely notice of the accident").

Courts have held that cases such as Lauritano and Cirucci are distinguishable from cases where the insured is the first party to provide notice to the insurer. See U.S. Liab. Ins. Co., 337 F. Supp. 2d at 448 n.15 (noting that because Lauritano involved situation where injured party first provided notice to insurer, it is "materially distinguishable" from situation in which insured first provided notice); Mass. Bay Ins. Co. v. Flood, 513 N.Y.S.2d 182, 183 (2d Dep't 1987) (noting distinction between two types of cases).

Because Wodraska, the insured, was the first party to provide notice to Atlantic -- through Keep, its agent -- the cases cited by Continental are inapplicable. Thus, when Atlantic disclaimed coverage to Wodraska, that disclaimer of coverage is also effective to Continental in its suit under Section 3420.

**3. Is Atlantic Estopped From Asserting Untimeliness Against Continental?**

Even if the disclaimer is effective as to Continental, Continental argues that Atlantic is estopped from asserting it because, when ACS sent a letter to Continental's counsel informing it that Atlantic had disclaimed coverage to Wodraska, the letter only identified the exclusionary endorsement as the basis for the disclaimer. According to Continental, Atlantic is therefore estopped from now asserting a defense that it did not assert in its disclaimer. See, e.g., Ambrosio v. Newburgh Enlarged City Sch. Dist., 5 A.D.3d 410, 413 (2d Dep't 2004) (holding that insurer "is estopped from asserting this defense because it failed to include this ground in its disclaimer letter to the [insured]."); Benjamin Shapiro Realty Co. v. Agric. Ins. Co., 287 A.D.2d 389, 389 (1st Dep't 2001) ("A notice of disclaimer must provide a claimant with a very specific ground upon which the disclaimer is predicated. A ground not raised in the letter of disclaimer may not later be asserted as an affirmative defense.") (citation omitted).

As Atlantic points out, however, Continental's estoppel argument is inapplicable here, because New York law is clear

that, where the insured is the first to give notice, and the injured party later gives notice, "the injured party's notice is 'superfluous' and the insurer need not disclaim as to the injured party." Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 217 n.6 (2d Cir. 2004) (quoting Flood, 513 N.Y.S.2d at 183); accord MCI LLC v. Rutgers Cas. Ins. Co., No. 06 Civ. 4412 (THK), 2007 U.S. Dist. LEXIS 59241, at ** 19-20 n.8 (S.D.N.Y. Aug. 13, 2007) ("Where an insured provides notice of an occurrence before an injured party exercises its independent right to notify an insurer of an occurrence, a disclaimer issued to the insured for failure to satisfy the notice requirement of the policy will be effective as against the injured party as well."); Winchester Fine Arts Servs., 337 F. Supp. 2d at 448 (reviewing cases and holding that "[o]nce an insurer has received notice from the insured, whatever notice requirements may be applicable are prima facie satisfied (subject to any challenge by the insurer). Thus, the ability of an injured party to provide notice to the insurer in lieu of the insured under § 3420(a)(3) is moot once notice has been accomplished by the insured."); Ringel v. Blue Ridge Ins. Co., 740 N.Y.S.2d 109, 111 (2d Dep't 2002) ("[W]here the insured is the first to notify the carrier, even if that notice is untimely, any subsequent information provided by the injured party is superfluous for notice purposes and need not be addressed in the notice of disclaimer issued by the insurer.").

Continental points to one decision it argues is directly on point and decided differently from the cases just

cited, but, in fact, Continental has misread the facts of the case upon which it relies. In Metropolitan Property & Liability Ins. Co. v. Horner, the Fourth Department held that an insurer's disclaimer of coverage was ineffective against the injured parties. 79 A.D.2d 869, 869 (4th Dep't 1980). Horner is distinguishable, however, because it was the injured parties -- not the insured -- who first gave notice to Metropolitan, the insurer. See id. at 869 ("On September 15, 1978 the attorney for defendants Baldwin, Lufkin and Agway [the injured parties] notified plaintiff [the insurer] of the fire. On September 16, 1978 defendants Horner [the insured] notified plaintiff of the fire."). Continental's contrary suggestion in its brief (see Pl. Mem. at 11 ("Over a year after the fire, Horner put its liability insurer Metropolitan on notice of the claim by the Injured Parties.")), is wrong. The instant case is distinguishable because the insured was the first (and only) party to give notice of the claim to the insurer.

Accordingly, Atlantic's disclaimer to Wodraska on the ground that Wodraska failed to comply with the notice requirement of the policy was effective as to Continental. Continental is, therefore, precluded from recovery in this action.

**CONCLUSION**

For the foregoing reasons, Continental's motion for summary judgment is denied and Atlantic's is granted. The Clerk of Court is directed to enter judgment dismissing the complaint,

with prejudice and with costs but without attorneys' fees. The Clerk of the Court shall close this case.

SO ORDERED.

Dated: New York, New York
June 4, 2009

DENNY CHIN
United States District Judge